UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRYANT, | ) | |
|       Plaintiff, | ) | No. 07 C 5909 |
| vs. | ) | |
| | ) | |
| GARDNER, *et al.*, | ) | Judge Ruben Castillo |
|       Defendants. | ) | Magistrate Judge Susan E. Cox |

**DEFENDANT GARDNER'S MEMORANDUM IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Defendant Juan H. Gardner ("Gardner"), by his attorney, and pursuant to Federal Rule of Civil Procedure 56(e), hereby submits the following in support of his motion:

**INTRODUCTION**

Plaintiff is currently a physical education teacher at Marshall High School and was the boys' basketball coach until his removal as coach on October 2, 2007. Defendants' Rule Local 56.1(a)(3) Joint Statement of Undisputed Material Facts, ¶55. Plaintiff challenges his removal as coach by bringing suit against the Board, Juan Gardner, Marshall's principal, and Dorothy Gaters, Marshall's athletic director and the girls' basketball coach. ¶¶1-4. Plaintiff alleges that Gardner removed him from his coaching position because of statements he made regarding open gym, in violation of his rights under the First Amendment (Count I). Plaintiff also alleges that Gardner violated an agreement relating to his return as the boys' basketball coach at Marshall for the 2007/08 season (Counts IV, V).

Plaintiff's claims against Gardner are without merit. Plaintiff's comments about open gym are not constitutionally protected speech and had nothing to do with his removal as coach. Rather, plaintiff engaged in a course of unprofessional conduct that formed the basis of Gardner's decision to remove him as the coach of the boys' basketball team. ¶108.

## STANDARD OF REVIEW

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). Although the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, inferences supported only by speculation or conjecture do not suffice to create a triable issue. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ARGUMENT

I. **Plaintiff's First Amendment retaliation claim fails because he did not engage in constitutionally protected speech and his speech was not related to Gardner's decision to remove him as coach of the boys' basketball team.**

When evaluating a Section 1983 claim for retaliation in violation of a public employee's First Amendment rights, the Court must determine if the employee has established that: (1) his speech is constitutionally protected, (2) he suffered a deprivation likely to deter free speech; and (3) his speech was a substantial or motivating factor in the retaliation. *Carreon v. Illinois Dept. of Human Svcs.*, 395 F.3d 786, 791 (7th Cir. 2005). If the employee establishes these elements, the burden shifts to the employer to prove by a preponderance of the evidence that it would have

taken the same action in the absence of the protected speech. *Id.* If the employer carries its burden, the employee must show that the employer's proffered reasons were pretext and that retaliatory animus was the real reason that the employer fired the employee. *Massie v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

### A. Plaintiff did not engage in constitutionally protected speech because he spoke out pursuant to his official duties as the boys' basketball coach.

The threshold inquiry in determining whether a public employee's speech is protected by the First Amendment is whether he spoke pursuant to his official duties or as a citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Mills v. City of Evansville*, 452 F.2d 646, 647-48 (7th Cir. 2006). If an employee spoke pursuant to his official duties, his speech is not protected as a matter of law, and he has no claim for retaliation under the First Amendment. *Garcetti*, 547 U.S. at 421. To be made pursuant to official duties, an employee's speech need not arise out of his core functions, but only be consistent with his general duties. *Spiegla v. Hull*, 481 F.3d 961, 966 (7th Cir. 2007). Whether an employee's speech is protected under the First Amendment is a question of law. *Connick v. Meyers*, 461 U.S. 138, 148 n.7 (1983).

Plaintiff alleges two instances of potentially protected speech. First, on August 31, 2007, Gardner told plaintiff that he was closing open gym for the boys' basketball team. ¶95. Gardner closed open gym because he wanted the players to focus on their academic studies. ¶97. Gardner also wanted the players to have the opportunity to participate in other sports, such as cross-country. ¶¶98-99. Plaintiff, however, objected to Gardner's decision to close open gym. ¶96. Second, on September 6, 2007, plaintiff spoke to Rosalind Lewis, the union delegate, about his objection to Gardner's decision to close open gym. ¶¶100-101. Lewis never spoke to Gardner directly but spoke to Towanna Butler, the assistant principal. ¶103.

3

Plaintiff's statements objecting to Gardner's decision to close open gym were related to his job duties as the coach of the boys' basketball team. ¶63. As coach, plaintiff was responsible for preparing his players for the basketball season, and his duties included scheduling practices, selecting assistant coaches and attending games. ¶63. He was also responsible for the conditioning of his players in open gym in the beginning of the school year. ¶63. Plaintiff's objections to Gardner's decision to close open gym directly affect his coaching responsibility over open gym. ¶63. Because plaintiff spoke pursuant to his duties as the coach of the boys' basketball team, his speech is not protected and he has no First Amendment retaliation claim.

### B. Plaintiff did not engage in constitutionally protected speech because he did not address a matter of public concern.

Not only did plaintiff speak pursuant to his job duties, but his comments are not related to a matter of public concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of the given statement, as revealed by the whole record. *Connick*, 461 U.S. at 147-48. Of these factors, the content of the speech is the most important. *Wernsing v. Thompson*, 423 F.3d 732, 751 (7th Cir. 2005). The Seventh Circuit has also emphasized the importance of determining the motivation of the speaker in making the questioned speech. *Friend v. Lalley*, 194 F. Supp. 2d 803, 810 (N.D. Ill. 2002) (Castillo, J.), citing *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985). If an employee did not speak on a matter of public concern, the inquiry under the *Connick-Pickering* analysis ends, and the employee has no cause of action under the First Amendment.

Here plaintiff's objections questioned the validity of Gardner's decision to close open gym. ¶96. However, Gardner closed open gym so that the players could focus on their academics and encourage participation in other sports such as cross country. ¶¶97-98. Whether the players had open gym is not a matter of public concern; rather, such logistics concern the internal

4

workings of an athletic program within its school. *See Davis v. McCormick*, 898 F. Supp. 1275, 1285 (C.D. Ill. 1995) (discussion of mundane aspects of a public school's athletic team's practice does not involve matters of public concern).

Moreover, plaintiff's statements to Gardner about plaintiff not receiving any benefits from the Martin Luther King ("MLK") Classic Tournament are not matters of public concern. Plaintiff first told Gardner that he was not receiving any benefits from the MLK tournament in a meeting with Gardner in which Gardner agreed to bring plaintiff back as coach. ¶61. These complaints are not a matter of public concern. The MLK Foundation, which runs the MLK tournament, is not-for-profit organization that is separate and distinct from the Board and Marshall. ¶130. Marshall is simply a tournament host. ¶131. There is no evidence that Marshall or any of the sponsors are entitled to any type of monetary benefit from the MLK tournament.

Other factors under the *Connick-Pickering* analysis militate against the conclusion that plaintiff's speech related to a matter of public concern. Plaintiff made his objections regarding the closing of open gym known to Gardner (in the presence of one of his assistant basketball coaches) in a private meeting. ¶95. Plaintiff spoke to Gardner in a private meeting when he raised his objections about not receiving benefits from the MLK tournament. ¶61. Plaintiff also spoke privately to Lewis in her role as the union delegate. ¶101. There is simply no evidence that plaintiff intended to raise his objections to Gardner's decision to close open gym and not receiving benefits from the MLK tournament as a public matter. While plaintiff's motive is not dispositive, it serves to clarify the central purpose of his statements. *Friend*, 194 F. Supp. 2d at 810. His objections were intended to further a purely private interest arising out of his position as the boys' basketball coach, namely, to improve his situation as the boys' basketball coach in an

5

attempt to become the coach of a state championship team. ¶¶65, 94, 126. Plaintiff was not attempting to call public attention to Gardner's decision to close of open gym or that he was not receiving benefits from the MLK tournament, as he only made his objections known to the principal (Gardner) and the union delegate (Lewis). ¶¶95-96, 101. As such, plaintiff cannot show that his statements regarding open gym or the MLK tournament were matters of public concern.

The second part of the *Connick-Pickering* analysis requires a balancing of the employee's interest as a citizen commenting on matters against the public employer's interest in promoting effective and efficient public service. *Pickering v. Board of Ed. of Township High School Dist.*, 391 U.S. 563, 568 (1968). To satisfy the public concern requirement, the speech in question "must relate to a community concern" and may not be "merely a personal grievance of interest only to the employee." *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004). As noted above, *supra*, pp. 4-5, plaintiff's objections regarding the closing open gym and not receiving benefits from the MLK tournament do not relate to a community concern but rather his interest in having his basketball players prepare for the upcoming basketball season so that he could become the coach of a state championship basketball team. ¶¶ 65, 94, 126.

C. **Plaintiff cannot show that his objections were a motivating factor in Gardner's decision to remove him as coach of the boys' basketball team.**

To establish a causal link between the protected expression and the subsequent employer action, the employee must show that the protected conduct was a substantial or motivating factor in the employer's decision. *Massey*, 457 F.3d at 716 ("[T]his element amounts to a causation inquiry[.]"). A "motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the employer's actions." *Id.*, citing *Spiegla*, 371 F.3d at 942.

In this case, plaintiff has no evidence showing that Gardner's decision was in any way related to the objections he made about the closure of open gym. Gardner alone made the

6

decision to remove plaintiff as coach. ¶¶104, 108. Plaintiff's unprofessional conduct relating to the Motor City Roundball Classic in Detroit and his treatment of players in prohibiting them from playing other sports and demeaning them in front of other coaches were the reasons for Gardner's decision to remove plaintiff as coach. ¶108. None of these reasons had anything to do with plaintiff's statements to Gardner about open gym. Plaintiff has no evidence to suggest that his objections about the closure of open gym were even considered by Gardner in his decision to remove plaintiff as coach. Further, there is no evidence that plaintiff's objections were referenced at the meeting in which Gardner informed plaintiff of his removal as coach.

Moreover, to the extent that plaintiff claims that Gardner removed him because he complained about how Marshall did not receive any benefits from the Martin Luther King ("MLK") tournament, his claim fails. Plaintiff testified that he complained about Gaters all the time, as far back as 2006. ¶87. Plaintiff's allegations are undercut by the fact that he complained that he did not receive any benefits from the MLK tournament **on the same day** Gardner agreed to have plaintiff come back and coach the 2007/08 basketball season. ¶61. Gardner could have told plaintiff he could not coach the 2007/08 season, but did not. Despite the fact plaintiff objected to not receiving benefits from the MLK tournament, Gardner brought plaintiff back to coach another season at Marshall. ¶55.

Because plaintiff has not come forth with sufficient evidence that his open gym or MLK objections were a substantial or motivating factor in Gardner's decision to remove him as coach, there is no burden on Gardner to explain his decision, and plaintiff's retaliation claim fails. *See Cromley v. Bd. of Educ. of Lockport Tp. High Sch. Dist. 205*, 17 F.3d 1058, 1068 (7th Cir. 1994), *cert denied*, 513 U.S. 916 (1994) ("The defendant does not have to prove a legitimate reason for

7

taking adverse action against the plaintiff until the plaintiff has come forth with sufficient evidence to support a *prima facie* case of substantial motivation.").

### E. Principal Gardner would have taken the same action, namely removed plaintiff as coach, in the absence of any protected speech.

If the employee can make the threshold showing that the protected expression was a substantial or motivating factor in the employer's decision, the burden shifts to the employer to produce evidence that it would have fired the employee even in the absence of his protected speech. *Massey*, 457 F.3d at 717. In other words, the employer "may show that retaliation was *not* the but-for cause" for the action. *Id*. If the employer makes this showing, the employee "then must persuade a fact-finder that the [employer's] proffered reasons were pretextual and that retaliatory animus was the real reason" that the employer took the adverse action. *Id*. Simply stated, the employee "must produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Id*.

The undisputed evidence of the record establishes that Gardner would have made the same decision to remove plaintiff as coach absent plaintiff's comments regarding open gym and the MLK tournament. There were three reasons why Gardner removed plaintiff as coach.

On September 27, 2007, Gardner spoke on the telephone with Kurt Keener, the athletic director of the Detroit Country Day School and director of the Motor City Roundball Classic, a four-day high school basketball tournament that is held in Detroit, Michigan. ¶109. Keener indicated to Gardner that Marshall signed a two-year contract to play in the Roundball Classic in 2006 and 2007. ¶115. Keener told Gardner that he (Keener) spoke to Gaters in late August and she informed him that she had already made arrangements for the team to play in the Proviso West tournament at the end of December. ¶115. The Roundball Classic conflicted with the Proviso West Christmas Tournament, played in Bellwood, Illinois. ¶111. Gardner wanted

8

Marshall to play in the Proviso West Tournament because it allowed the players to be closer to their families and the Marshall student body, alumni and community during the holiday season. ¶112. Keener told Gaters that he understood and that he could find a team to replace Marshall in the Roundball Classic. ¶116. Keener did not charge Marshall a penalty for withdrawing from the Roundball Classic. ¶113.

In the same conversation, Keener told Gardner that after he spoke with Gaters, Keener received a phone call from Mal Parker, who worked with Keener to organize the Roundball Classic. ¶117. According to Keener, Parker told Keener that he (Parker) had spoken to plaintiff and that plaintiff wanted to return to the Roundball Classic. ¶117. Plaintiff indicated to Parker that he wanted Marshall to be held to the contract to play in the Roundball Classic, even though Keener had released Marshall from the contract. ¶118. Parker told Keener that this was plaintiff's idea of leverage so that he did not have to play in Proviso West. ¶118. Keener was not comfortable with this request and conveyed to Gardner the information he received about plaintiff's actions. ¶114. Keener followed-up his telephone conversation with Gardner with an email to Gardner sent the same day. ¶119.

That week, William Gray, a physical education teacher and the head football coach at Marshall, approached Gardner about a conversation he had with plaintiff a month prior. ¶120. One of plaintiff's basketball players went on a college visit with his parents without telling plaintiff. ¶121. In response to the situation, plaintiff used profanity to describe the player and threatened to bench him when college coaches were in attendance at Marshall games. ¶121. The weekend of September 29, 2007, the mother of a basketball player expressed to Gardner that plaintiff told her son that he would reduce his playing time if he participated in other sports at

9

Marshall. ¶122. Based on plaintiff's course of unprofessional conduct, Gardner made the decision to remove plaintiff as coach. ¶108.

There is no evidence that Gardner's reasons for removing plaintiff as coach were pretextual. "[T]he question in a discrimination case is not whether the employer's stated non-discriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). Plaintiff must show more than his employer's decision was "mistaken, ill considered, or foolish." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). "[A]s long as [the employer] honestly believes those reasons, pretext has not been shown." *Id.*

Plaintiff must essentially show that Gardner's reasons for removing him as coach were lies. There is simply no evidence to suggest that these reasons were lies. Gardner testified that he relied on Keener's statements to him regarding plaintiff's underhanded dealings with Parker in plaintiff's attempt to force Marshall to play in the Detroit Roundball Classic after Keener had allowed Marshall to withdraw without penalty. ¶123. Keener's testimony confirms that this is what he told Gardner. ¶¶114-119. Gardner also spoke with Gray who related to him plaintiff's statements about a basketball player and how he stated he would bench him if he did not do as he said when he went on college visits. ¶¶120-121. Gardner also testified that he spoke to a basketball player's mother regarding her concerns that plaintiff was benching her son for wanting to play another sport besides basketball. ¶122.

10

Each reason for plaintiff's removal as coach has an undisputed basis in fact. Accordingly, plaintiff cannot show that any of these reasons were not the reasons for his removal as coach, and thus cannot show pretext or retaliatory animus.

**II.     Plaintiff's breach of contract claim fails because the list of conditions is not legally sufficient, and even if it is, plaintiff breached it.**

Because Gardner has moved for summary judgment on plaintiff's sole federal claim against him, Gardner requests that the Court not exercise supplemental jurisdiction over plaintiff's state law claims of breach of contract and promissory estoppel. *See Horwitz v. Bd. of Education of Avoca Sch. Dist.*, 260 F.3d 602, 617 (7th Cir. 2001) (noting that § 1367(c) "allows a district court not to assume supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction").

To prevail on a breach of contract claim under Illinois law, plaintiff must show: (1) the existence of a valid and enforceable contract; (2) his performance under the terms of the contract; (3) Gardner breached the contract; and (4) plaintiff suffered an injury as a result of Gardner's breach. *Burrell v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004). Employment contracts in Illinois are presumed to be at-will and are terminable by either party. *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 485, 680 N.E.2d 1347, 1349 (1997). "An employee bears the burden of overcoming the presumption of 'at will' employment by showing that the parties contracted otherwise." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 363 (7th Cir. 2005).

**A.     The list of conditions is not a valid and enforceable contract.**

For a binding employment contract to exist under Illinois law, the contract must be clear and definite and supported by consideration. *Sembos v. Philips Components*, 376 F.3d 696, 703 (7th Cir. 2004); *McInerney*, 176 Ill. 2d at 485, 680 N.E.2d at 1349. In order for a contract to be valid, it must contain an offer, acceptance, and consideration. *Halloran v. Dickerson*, 287 Ill.

11

App. 3d 857, 867-68, 679 N.E.2d 774 (Ill. App. Ct. 1997). "Consideration is defined as the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance." *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1198, 738 N.E.2d 610 (Ill. App. Ct. 2000), citing Restatement (Second) of Contracts § 71 (1981).

Here, the list of conditions reflects that there was no consideration. According to the list, plaintiff promised to: (1) wear a shirt and tie to all high profile basketball games, (2) honor the MLK shootout agreement, (3) honor the Proviso West tournament agreement, (4) allow basketball players to participate in other sports, (5) not demean other coaches, and (6) make certain all coaches are Board certified. ¶60. The list of conditions does not reflect any promises made by or on behalf of Gardner, the Marshall school administration, or the Board. ¶60.

In order for a contract to be enforceable, it must be sufficiently definite so that its terms are reasonably certain and able to be determined. *Halloran*, 287 Ill. App. 3d at 867-68. In other words, the "offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29, 578 N.E.2d 981, 983 (Ill. 1991). Thus, where "essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Id.*, 578 N.E.2d at 984.

No binding contract exists here. The list of conditions, attached as Exhibit Q, is entitled "2007-2008 Boys Basketball Agreement." ¶60. It does not reflect the identities of all parties to the agreement. ¶60. Only plaintiff's signature appears at the bottom of the list of conditions. ¶60. Despite these glaring omissions, the list of conditions also lacks other fundamental contractual terms such as the amount of compensation to plaintiff for his coaching services and the scope of his responsibilities as coach. ¶60. The list of conditions is not dated and there is no

indication of a start or end date for plaintiff's services as coach or for the basketball season. ¶60. The list of conditions does not set forth adequate terms for compliance with the conditions and does not provide any basis for determining when a breach of one of the conditions has occurred. ¶60. *See Cheevers*, 144 Ill. 2d at 30, 578 N.E.2d at 984 (finding no valid or enforceable contract where terms for compliance and basis for determining breach were not set forth in agreement).

Importantly, the list of conditions does not abrogate or curtail Gardner's authority as the principal of Marshall to make employment decisions. ¶¶60, 104. It does not limit Gardner's authority to remove plaintiff as the boys' basketball coach. ¶60. Because the list of conditions lacks consideration and many essential terms, it cannot be considered a valid or enforceable contract, and therefore plaintiff's breach of contract claim fails.

### B. Gardner did not breach the list of conditions when he removed plaintiff as coach because plaintiff failed to meet all of the conditions.

Moreover, plaintiff failed to comply with all of the conditions contained in the document. Specifically, plaintiff breached Item Nos. 3 and 4. Item No. 3 required plaintiff to "[h]onor the Proviso West Christmas Tournament agreement[.]" ¶60. Plaintiff's actions relating to the Roundball Classic undermined his promise to play in Proviso West. ¶¶114-119. As noted above Gardner learned from Keener that plaintiff was attempting to convince the administrators of the Roundball Classic to renege on their agreement to let Marshall out of its contract in order to force Marshall to play in the Roundball Classic instead of Proviso West. ¶¶117-18. By contacting Parker in an attempt to force Marshall's compliance with the Roundball Classic contract, plaintiff broke his promise to honor his agreement to play Proviso West. ¶118.

Item No. 4 required plaintiff to "[a]llow basketball players to participate in other sports[.]" ¶60. Gardner received information from the mother of a basketball player complaining that plaintiff threatened to bench her son if he played another sport other than basketball. ¶120.

13

This is in clear violation of plaintiff's agreement to permit his players to participate in other sports. Moreover, there is no evidence that Gardner breached the purported agreement. The plain language states that Gardner would permit plaintiff to return as coach as long as plaintiff abided by the items listed. ¶60. Gardner did so. ¶55. Plaintiff returned to Marshall as coach at the beginning of the 2007/08 and was only relieved of his coaching position when Gardner learned of his unprofessional conduct surrounding the Roundball Classic and his inappropriate statements to and about his basketball players. ¶¶114-122. Because plaintiff did not meet all of the conditions, he is in breach of the purported agreement and Gardner's decision to remove him as the coach of the boys' basketball team is legally justified. As such, plaintiff's breach of contract claim fails.

**III.    Plaintiff's promissory estoppel claim fails because the alleged promises made by Plaintiff and Gardner are too ambiguous and his failure to keep his promises makes his reliance of continued employment as coach unexpected and not foreseeable.**

To establish promissory estoppel under Illinois law, plaintiff must show that: (1) Gardner made an unambiguous promise to him, (2) he relied on the promise, (3) his reliance was expected and foreseeable by Gardner, and (4) he relied on Gardner's promise to his detriment. *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005), citing *Quake Constr. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10, 565 N.E.2d 990 (1990). Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking. *Dumas*, 416 F.3d at 677.

Assuming that there was no consideration for any of the alleged promises made in connection with plaintiff's return as coach, plaintiff's promissory estoppel claim falls short. For the reasons stated above, *supra,* pp. 11-13, the promises made between plaintiff and Gardner are too vague and ambiguous. Even plaintiff's recollection of the conversation between he and

14

Gardner does not shed any light on the questions left open by the promises made between them. ¶59. The only exchange between plaintiff and Gardner was that in exchange for abiding by these conditions, Gardner would permit plaintiff to return as the boys' basketball coach. ¶60. According to plaintiff, no other promises were made by him or Gardner. ¶59.

Moreover, plaintiff cannot show that his reliance on Gardner's promise of continued employment as coach was expected or foreseeable by Gardner in light of the fact that plaintiff did not comply with all of the conditions. ¶¶114-119. As outlined above, *supra* pp. 8-10, plaintiff went behind the administration's back in an attempt to force Marshall to play in the Roundball Classic so he did not have to honor the agreement to play in Proviso West. ¶¶117-118. Also, according to a player's mother, plaintiff threatened to bench her son because he wanted to play another sport. ¶122. In light of plaintiff's conduct, he cannot show that his reliance on Gardner's promise that he would keep him as coach for the 2007/08 season was expected or foreseeable by Gardner. Accordingly, plaintiff's promissory estoppel claim fails.

## CONCLUSION

**WHEREFORE**, Defendant Juan Gardner respectfully requests that this Court grant his motion for summary judgment.

Dated: August 1, 2008  Respectfully submitted,

JUAN H. GARDNER, Defendant

By: s/ Jennifer Y. Wu
Jennifer Y. Wu, Assistant General Counsel
Board of Education of the City
of Chicago - Law Department
125 South Clark Street, Suite 700
Chicago, IL 60603
(773) 553-1720

## CERTIFICATE OF SERVICE

I, Jennifer Y. Wu, an attorney do hereby certify that I caused the attached **Defendant Gardner's Memorandum in Support of his Motion for Summary Judgment** to be served upon counsel of record *via* CM-ECF E-Filing pursuant to the General Order on Electronic Case Filing, Section XI(C), on this 1st day of August, 2008.

s/ Jennifer Y. Wu